

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT KINGSPORT

| | | |
|---|---|---|
| **Brandon Dugger,** | ) | **Docket No.: 2015-02-0316** |
| **Employee,** | ) | |
| **v.** | ) | **State File Number: 46631-2016** |
| | ) | |
| **Employment Solutions, LLC,** | ) | **Judge Brian K. Addington** |
| **Employer,** | ) | |
| **And** | ) | |
| | ) | |
| **Riverport Insurance Company,** | ) | |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on November 8, 2016, on the Request for Expedited Hearing filed by the employee, Brandon Dugger, under Tennessee Code Annotated section 50-6-239 (2015).

The present focus of this case is whether Employment Solutions is responsible for payment of medical and temporary disability benefits to Mr. Dugger. The central legal issue is whether Mr. Dugger timely reported an injury by accident, triggering Employment Solutions' responsibility to provide a panel of physicians.[1] For the reasons set forth below, the Court holds Mr. Dugger has submitted sufficient evidence from which this Court could conclude he is likely to prevail at a hearing on the merits on the central legal issue, thus he is entitled to medical benefits.

### History of Claim

Employment Solutions is a staffing agency in Johnson City, Tennessee. By agreement, the workers it places at client businesses remain its employees for a period of

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

1

time, a fact communicated to the workers it staffs. One of Employment Solutions' clients is Gardner Paint.

In January 2016, a supervisor at Gardner Paint, Rodney Conduff, discussed a job opportunity at Gardner Paint with Mr. Dugger and informed Employment Solutions of its interest in employing him. Mr. Conduff directed Mr. Dugger to contact Employment Solutions. Mr. Dugger contacted Employment Solutions and discussed employment with Tony Carpenter.[2] Mr. Dugger should have presented himself to Employment Solutions to sign employment paperwork; however, he mistakenly presented to work at Gardner Paint without completing the employment process with Employment Solutions. After discovering the error, Mr. Conduff sent Mr. Dugger back to Employment Solutions that same day, where Mr. Dugger successfully completed the employment paperwork[3] and a drug test.

Mr. Dugger's work for Gardner Paint required travel. In March 2016, Gardner Paint contracted for a job at Hutchinson Sealing in Wytheville, Virginia. The work required Mr. Dugger and his co-workers to travel for an extended stay. Mr. Dugger and the other employees rode in a company truck to the jobsite and stayed in a hotel in Wytheville for the duration of the job.

On Saturday, March 19, 2016, Mr. Dugger ran a floor-polishing machine as part of his job duties. At approximately 5:30 p.m., he injured his left arm when he reached out to move a piece of machinery while operating the polisher. Mr. Dugger's arm became caught between the polisher and the client's machine, causing him to feel a crush/snap in his left arm. He felt immediate pain and noticed a bony protrusion near his left wrist. Mr. Dugger immediately notified Floyd Bass Jr., his on-site Gardner Paint supervisor, of the accident. Mr. Bass agreed to take Mr. Dugger to the hospital, but first drove him to the hotel to collect his belongings.

While walking toward the hotel, Mr. Dugger slipped in loose gravel and fell to the ground, reaching out with his left arm. He experienced more pain in the injured arm. Mr. Dugger then collected his personal items, and Mr. Bass took him to Wythe County Community Hospital for treatment.

When Mr. Dugger arrived at the hospital, he informed the medical providers that he tripped in loose gravel in a hotel parking lot and fell onto his outstretched arm. (Ex. 5 at 16, 19.) X-rays indicated that Mr. Dugger sustained a left ulnar styloid fracture. *Id.* at 12. Dr. Kevin Fox discharged Mr. Dugger with a five-day work release and instructions to follow up with an orthopedic physician. *Id.* at 1.

---

[2]  The parties did not inform the Court of Mr. Carpenter's job title.

[3]  Mr. Dugger signed Employment Solutions paperwork that required him to report all work-related injuries requiring medical treatment "to [his] supervisor" on the date of injury; otherwise, he could be responsible for incurred costs for treatment.

*Facts Re: Report of Injury, Per Mr. Dugger*

Mr. Dugger testified that he could not call Employment Solutions when he returned home the following day, because it was a Sunday, and the office was closed. On Monday, March 21, 2016, Mr. Dugger called Employment Solutions to report the accident. He spoke to "Mike,"[4] but was told "I screwed myself and get better."

*Facts Re: Report of Injury, Per Employment Solutions*

During the hearing, Adam Phillips, staffing manager at Employment Solutions, testified that Mr. Dugger did not notify him of the accident. Rather, Mr. Conduff with Gardner Paint called him on March 19, 2016, and advised that Mr. Dugger informed him of an injury to his left arm. According to Mr. Conduff, however, Mr. Dugger advised that he injured his arm "on his own time," and that his condition was not work-related. Consequently, Employment Solutions took no further action with regard to Mr. Dugger's left arm condition.

Two months later, in May 2016, Mr. Dugger's friend, Stephanie Steele, called Employment Solutions on two occasions seeking information regarding its workers' compensation insurance carrier and how to file a claim. She did not mention Mr. Dugger. Employment Solutions did not provide the information to Ms. Steele, because it had no relationship to her. After the second call, Mr. Dugger took the phone and requested the workers' compensation information. Given the apparent confusion, his call was transferred to the company owner, Mike Phillips, who spoke with Mr. Dugger about the work accident, injury, and Mr. Dugger's request for medical treatment.

Mike Phillips testified he could not remember the exact date Mr. Dugger called about his injury, but that it was two or three weeks after the injury, and not two months afterwards. Mr. Phillips also testified that Mr. Conduff had earlier called about Mr. Dugger's injury, as noted above.

*Facts Re: Mr. Dugger's Treatment and Work Status*

Mr. Dugger sought treatment with several medical providers after his intitial treatment at Wytheville Hospital. Mr. Dugger submitted a five-day off-work slip he received from First Assist Urgent Care dated April 1, 2016, but did not supply any treatment notes supporting the excuse.

According to the limited medical records submitted at the Expedited Hearing, Mr. Dugger next treated with Dr. Kent Lord on May 27, 2016. Dr. Lord noted Mr. Dugger exhibited decreased range of motion in his left wrist. While he also recorded that Mr.

---

[4] Mike Phillips is the owner of Employment Solutions.

Dugger suffered an injury "2 months ago," Dr. Lord added, "his radiographic changes are chronic and have been in process for far longer than 2 months." (Ex. 8 at 7.) Dr. Lord prescribed physical therapy, and in his referral note, the doctor diagnosed Mr. Dugger with "Post-traumatic osteoarthritis, left wrist" and "wrist DJD likely SLAC wrist with recent acute injury. Now with significant stiffness, pronator contracture." *Id.* at 3. Mr. Dugger testified Dr. Lord performed surgery on his left arm on June 26, 2016, and that he underwent physical therapy. The parties did not supply any exhibits concerning Mr. Dugger's ongoing treatment, surgery, or work status following his May 27, 2016 appointment with Dr. Lord.

Mr. Dugger filed a Petition for Benefit Determination seeking medical and temporary disability benefits on June 23, 2016. (T.R. 1 at 1.) The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. (T.R. 2.) Mr. Dugger filed a Request for Expedited Hearing on October 4, 2016, with an attached affidavit. (T.R. 3.)

At the hearing, Mr. Dugger argued that he injured his left arm at work on March 19, 2016, both at the Hutchinson plant and in the hotel parking lot. He reported his injury two days later, but Employment Solutions told him he reported it too late to secure workers' compensation benefits. As a result, he asserted that he reasonably sought unauthorized medical treatment, for which Employment Solutions should be required to reimburse him. He also requested weekly temporary disability benefits at the rate of $362.83[5] from the date of injury to present, in addition to reasonable ongoing medical treatment for his injury. Mr. Dugger also asserted that he did not act dishonestly when he initially reported to work for Gardner Paint without first completing the paperwork for Employment Solutions. He explained that he made an honest mistake and simply understood that he should present at Gardner Paint at the beginning of the day. When his error was discovered, he promptly reported to Employment Solutions and successfully completed the employment process, including a drug test.

Employment Solutions asserted that, according to word it received from Gardner Paint, Mr. Dugger's injury was not work-related. Further, Mr. Dugger did not immediately contact Employment Solutions following his injury, but waited either two to three weeks or two months to provide notice of the injury, which constituted inadequate notice and resulted in prejudice to Employment Solutions. Moreover, Employment Solutions argued it had no obligation to investigate the matter when Mr. Conduff informed it that Mr. Dugger claimed his injury was not work-related.

Employment Solutions also challenged Mr. Dugger's credibility. It argued that Mr. Dugger acted dishonestly when he initially presented to work at Gardner Paint and claimed he was told to do so without first completing Employment Solutions' hiring

---

[5] The Court determined the compensation rate from the provided wage statement.

process. It argued Mr. Dugger wrongfully told Mr. Conduff he could complete Employment Solutions' employment process and documentation after completing the work day.

Employment Solutions argued that Mr. Dugger sought medical attention on his own in an attempt to avoid a drug test, which, according to company policy, would have been administered promptly upon his initial treatment at Wytheville Hospital, if he had asserted a work injury. Lastly, Employment Solutions contends that, because there is no medical causation statement linking Mr. Dugger's injury to a work accident, the Court must deny his request for medical and temporary benefits.

### Findings of Facts and Conclusions of Law

As the injured employee seeking benefits, Mr. Dugger has the burden of proof on all essential elements of her claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). Mr. Dugger need not prove every element of his claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). However, at an expedited hearing, he has the burden to come forward with sufficient evidence from which the trial court can determine that he is likely to prevail at a hearing on the merits. *Id.*

To be compensable under the Workers' Compensation Law, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(14) (2015). The term "injury" is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* An injury is accidental only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment. Tenn. Code Ann § 50-6-102(14)(a) (2015).

Mr. Dugger alleged a left-arm injury arising from two specific work-related incidents that occurred at the Hutchinson Sealing plant and his hotel parking lot on March 19, 2016. Employment Solutions did not offer Mr. Conduff as a witness at the hearing. Rather, it only offered his hearsay testimony to dispute the work-related nature of Mr. Dugger's accident. Although Mr. Dugger did not object to the hearsay testimony, the Court accredits his in-person testimony over the hearsay testimony of Mr. Conduff.

Moreover, the Court determines that Mr. Dugger's left arm injury occurred either while he engaged in floor polishing or when he fell at the hotel. As a traveling employee, the course of Mr. Dugger's employment is expanded. The Tennessee Supreme Court has

5

held, "[A]n employee whose work entails travel away from the employer's premises is generally considered to be within the course of his or her employment continuously during the trip, except when there is a distinct departure on a personal errand." *McCann v. Hatchett*, 19 S.W.3d 218, 221 (Tenn. 2000). If the injury occurred while Mr. Dugger polished the floor, his injury would be compensable. Likewise, under the traveling employee doctrine, if his injury occurred when he fell at the hotel, it would also be compensable.

Furthermore, the Court finds that Mr. Dugger provided actual notice of the work accident to Employment Solutions within the thirty-day time period prescribed in Tenn. Code Annotated section 50-6-201(a)(1) (2015). He immediately reported the accident to his Gardner Paint supervisor, Mr. Bass, who was the only supervisor available at that location. Also, even by Mr. Phillips' own account, Mr. Dugger provided actual notice of the injury by phone to him no later than two to three weeks following the March 19, 2016 accident. In light of the above, the Court finds that a work accident occurred and that Mr. Dugger timely reported it to Employment Solutions.

Mr. Dugger requested temporary disability and medical benefits, including reimbursement for the unauthorized medical treatment he obtained to this point. Mr. Dugger presented limited medical evidence in this matter. The medical records point to a broken left ulna, but the records from Dr. Lord also point to pre-existing, possibly degenerative medical issues with Mr. Dugger's left arm. Although Mr. Dugger testified he had no prior problems with his left arm, the medical evidence appears otherwise at this point. Further, no physician has rendered a causation opinion. Other than in the most obvious cases, expert medical testimony on the issue of causation is required to prove a compensable injury. *See Willis v. Allstaff*, No. 2015-TN Wrk. Comp. App. Bd. LEXIS 42, at *26-28 (Tenn. Workers' Comp. App. Bd. Nov. 9. 2015). While the provided information tends to show a compensable work injury to Mr. Dugger's left arm, Dr. Lord's statement that "radiographic changes are chronic and have been in process for far longer than 2 months" potentially casts doubt on causation.

Nevertheless, the Court finds Mr. Dugger timely provided notice of his alleged injury to Employment Solutions. His claim remains valid at this point. Moreover, the Court finds that the evidence presented is sufficient to establish Mr. Dugger is likely to prevail at a hearing on the merits on the issue of entitlement to a panel of physicians.

Given the evidence presented, the Court holds that Employment Solutions must provide Mr. Dugger with an appropriate panel of physicians in accordance with Tennessee Code Annotated section 50-6-204 (2015). The Court reserves all issues concerning temporary disability benefits and reimbursement for past medical expenses, pending the determinations of the authorized treating physician.

**IT IS, THEREFORE, ORDERED** as follows:

1. Employment Solutions shall provide Mr. Dugger with a panel of physicians in accordance with Tennessee Code Annotated section 50-6-204 (2015). The parties shall supply said physician with medical records to date.

2. At this time, the Court reserves the issues of payment for past temporary disability benefits and reimbursement of unauthorized medical expenses incurred by Mr. Dugger.

3. This matter is set for Initial (Scheduling) Hearing on December 19, 2016, at 10:00 a.m. Eastern.

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

5. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 16th day of November, 2016.**

/s/ Brian K. Addington
**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (ET).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request from the Court Clerk the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's

8

position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Wage Statement;
2. Form C-32 Notice of Denial of Claim for Compensation;
3. Employment Solutions assignment sheet;
4. Written Statement of Floyd Bass (For Identification Only);
5. Medical Records-Wythe County Community Hospital;
6. Medical Records-Rural Health Services;
7. Medical Record-First Assist Urgent Care;
8. Medical Records-Dr. Kent Lord;
9. Medical Bills (For Identification Only); and,
10. Employment Solutions Policy Sheet.

Technical record:[6]
1. Petition for Benefit Determination, June 23, 2016;
2. Dispute Certification Notice, September 6, 2016;
3. Request for Expedited Hearing, October 4, 2016; and,
4. Employer's Position Statement, November 3, 2016.
5.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order for Medical Benefits was sent to the following recipients by the following methods of service on this the 16th day of November, 2016.

| Name | Certified Mail | Via Email | Service Sent To: |
|------|:---:|:---:|------|
| Brandon Dugger, Self-Represented Employee | X | X | 155 Sugar Hollow Road Roan Mountain, TN 37687 brandondugger@hotmail.com |
| Ryan Sarr, Esq. Attorney for Employment Solutions | | X | rsarr@morganakins.com |

/s/ **Penny Shrum**
**Penny Shrum, Clerk of Court**
**WC.CourtClerk@tn.gov**

---

[6] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.